UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALLSTATE INSURANCE COMPANY,

          Plaintiff,

– against –

YANNIS SIDAKIS and ANDREW SIDAKIS,

          Defendants.


YANNIS SIDAKIS,

          Counterclaimant,

– against –

ALLSTATE INSURANCE COMPANY,

          Counter-claim
          Defendant.

**MEMORANDUM AND ORDER**

13-CV-7211



FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ FEB 1 2 2016 ★

BROOKLYN OFFICE

**Parties**

Allstate Insurance Company

**Appearances**

James S. Yu
Seyfarth Shaw LLP
620 Eighth Avenue
New York, NY 10018
(212) 218-5500

J. Scott Humphrey
Seyfarth Shaw LLP
131 S Dearborn Street, Suite 2400
Chicago, IL 60603
(312) 460-5528

Marcus Mintz
Seyfarth Shaw LLP
131 S Dearborn Street, Suite 2400

1

Chicago, IL 60603
(312) 460-5000

Yannis Sidakis
Andrew Sidakis

Urban Sylvester Mulvehill, Jr.
O'Neill, DiManno & Kelly
15 Beekman Street, Suite 1000
New York, NY
(212) 267-5556

**JACK B. WEINSTEIN, Senior United States District Judge:**

## Table of Contents

I.  Introduction .................................................................................................4

II.  Procedural History .........................................................................................5

III.  Facts ..........................................................................................................6

IV.  Claims .........................................................................................................8

    A.  Allstate's Breach of Contract Claim ................................................................8

        1.  Misuse of Confidential Information ...........................................................8

        2.  Altered Electronic Payment Options .......................................................10

        3.  Failure to Return Allstate Property .........................................................10

        4.  Misuse of Confidential Information to Illegally Compete .............................11

    B.  Yannis Sidakis' Breach of Contract Counterclaim ...............................................13

    C.  Yannis Sidakis' Tortious Interference Counterclaim ...........................................14

V.  Summary Judgment Standard .........................................................................14

VI.  Law ..........................................................................................................15

    A.  Breach of Contract ....................................................................................15

    B.  Tortious Interference with Prospective Economic Advantage ............................15

VII.  Application of Law to Facts..........................................................................15

    A.  Allstate's Breach of Contract Claim ..............................................................15

        1.  Yannis' Liability for Breach of Contract....................................................16

        2.  Andrew's Liability for Breach of Contract.................................................19

    B.  Yannis Sidakis' Breach of Contract Counterclaim ..............................................20

    C.  Yannis Sidakis' Tortious Interference Counterclaim ...........................................22

VIII.  Conclusion ...............................................................................................22

## I.    Introduction

This is a breach of contract case brought by Allstate Insurance Company ("Allstate") against Yannis Sidakis and Andrew Sidakis ("Yannis" and "Andrew," respectively).

Yannis was formerly an Exclusive Allstate Agent in Queens. He marketed and sold Allstate's insurance products and services in accordance with the terms and conditions of an Exclusive Agency Agreement ("EA Agreement"). Yannis' relationship with Allstate ended on May 31, 2012, when he sold his economic interest in his agency to Peter Silletti ("Silletti") for 1.9 million dollars. Allstate alleges that sometime near that transaction, Yannis' son, co-defendant Andrew, with Yannis' knowledge and approval, changed Allstate customer phone numbers, email addresses, and electronic payment options in violation of a Confidentiality Agreement executed between Andrew, Yannis, and Allstate.

Allstate claims that its goodwill and customer relationships have been damaged, and that it has lost significant business as a result of Yannis' and Andrew's misconduct.

Defendant Yannis asserts two counterclaims against Allstate. First, he alleges that Allstate breached a contractual right that allowed him to sell a book of business separate and apart from his Allstate book of business (the "Ivantage Business"). Second, Yannis alleges that Allstate tortiously interfered with his contractual rights when it transferred the Ivantage Business from a third party, Northeast Agencies, Inc. ("Northeast"), to Silletti with no consideration for Yannis. Allstate's position is that the Ivantage Business belonged to it and was not Yannis' to sell.

Allstate moved for summary judgment on its claim for breach of contract and on Yannis Sidakis' counterclaims. At the hearing on Allstate's motion, the court heard at length testimony by the key witness in this action, Yannis Sidakis, father of the other defendant, Andrew Sidakis. The court was impressed by the candor and credibility of the witness. It concludes that a jury

will also be impressed by this witness. A reasonable jury could, crediting Yannis Sidakis'
testimony, find in defendants' favor on the claims and counterclaims. An analysis of the briefs
and evidence submitted by the parties results in the same conclusion: the case should be tried by
a jury.

## II.    Procedural History

On December 18, 2013, Allstate filed a complaint against Yannis, Andrew, and two other
former employees of Yannis' agency. Four counts are alleged: (i) breach of contract; (ii)
misappropriation of trade secrets and confidential information; (iii) unfair competition; and (iv)
tortious interference with business and contractual relations. *See* Compl., Dec. 18, 2013, ECF
No. 1. The two employees have been dismissed from the case, with prejudice, pursuant to Fed.
R. Civ. P. 41(a)(1)(A)(ii). *See* Stipulation for Dismissal, Jan. 15, 2016, ECF No. 101.

On February 10, 2014, Yannis filed his answer. *See* Answer, Feb. 10, 2014, ECF No. 20.
Less than one month later, Yannis filed an amended answer and asserted two amended
counterclaims against Allstate for breach of contract and tortious interference. *See* Am. Answer
& Countercls., Mar. 3, 2014, ECF No. 23. Allstate moved to dismiss these counterclaims
pursuant to Fed. R. Civ. P. 12(b)(6). *See* Mot. to Dismiss Countercls. of Yannis Sidakis, Mar.
27, 2014, ECF No. 25. Yannis then amended his answer and counterclaims. *See* Second Am.
Answer & Countercls., May 21, 2014, ECF No. 33. On November 6, 2014, Allstate's motion to
dismiss the amended counterclaims was denied. *See* Order Denying Mot. to Dismiss Countercls.
of Yannis Sidakis, Nov. 6, 2014, ECF No. 51.

Allstate now moves for partial summary judgment on its breach of contract claim, and
Yannis Sidakis' breach of contract and tortious interference counterclaims. *See* Mot. for Partial
Summary Judgment, Nov. 6, 2015, ECF No. 89. An evidentiary hearing was held on February 4,
2016. *See* Hr'g Tr., Feb. 4, 2016.

## III.    Facts

Defendant Yannis Sidakis' agency relationship with Allstate was established pursuant to an Allstate Exclusive Agency Agreement, dated May 1, 2000. *See* Decl. of Marcus L. Mintz, Nov. 6, 2015, ECF No. 89-1 ("Mintz Decl."), at Ex. B ("EA Agreement"). The EA Agreement granted Yannis the right to sell Allstate Insurance products and services, and to receive commissions for the sale of the products and services. *Id.* at §§ II.A. & XV.A. The agency relationship was modified under various notices, supplements, reference guides, and manuals in 2010 and 2012. Mintz Decl. at Exs. P-Q. Yannis' Allstate agency was located at 31-13 23rd Avenue in Astoria, New York. EA Agreement at § V.A.; Mintz Decl. at Ex. A (Feb. 19, 2015 Dep. Tr. of Yannis Sidakis ("Yannis Tr.")), at 13:7-14.

Under a brokerage agreement entered into with Northeast, as part of his agreement with Allstate, and with the approval of Allstate, Yannis also acted as an agent for Northeast. Mintz Decl. at Ex. R ("Brokerage Agreement"). Yannis testified that he administered a book of business separate and apart from the Allstate book of business; and that the economic interest derived from the Allstate book of business was distinct from that of Northeast (the Northeast book is referred to as the "Ivantage Business"). *See generally* Decl. of Yannis Sidakis, Dec. 23, 2015, ECF No. 93 ("Dec. 23, 2015 Yannis Decl. No. 2"); Hr'g Tr., Feb. 4, 2016.

Andrew, Yannis' son, executed a Confidentiality and Non-Competition Agreement with Allstate and Yannis on July 30, 2007. *See* Mintz Decl., at Ex. D ("Confidentiality Agreement"). This agreement enabled Andrew to work at Yannis' Allstate agency and to assist the agency in marketing and selling Allstate products and services. *Id.*

Both the EA Agreement and Confidentiality Agreement contained provisions to protect confidential information. The EA Agreement defines confidential information as:

business plans of the Company; information regarding the names, addresses, and ages of policyholders of the Company; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings and any policyholder information subject to any privacy law; claim information; certain information and material identified by the Company as confidential or information considered a trade secret as provided herein or by law; and any information concerning any matters affecting or relating to the pursuits of the Company that is not otherwise lawfully available to the public.

EA Agreement at § IV.D. The Confidentiality Agreement contains a nearly identical clause. *See* Confidentiality Agreement at ¶ 3. Both Agreements also provide that confidential information could only be used for the benefit of Allstate, that it would remain Allstate property, and that upon the termination of Yannis' and Andrew's relationships with Allstate, all confidential information would be returned. *See* EA Agreement at §§ IV.D-E; Confidentiality Agreement at ¶¶ 4-5.

While the EA Agreement was formally between Allstate and Yannis, it is not disputed that Yannis, Andrew, and Allstate were all bound by the Confidentiality Agreement.

Yannis and Andrew also agreed to post-termination obligations not to solicit or compete with Allstate within stated geographical areas. EA Agreement at § XVIII.D; Confidentiality Agreement at ¶ 7. According to Allstate, Yannis and Andrew violated these provisions. *See* Pl.'s Mem. in Supp. of its Mot. for Partial Summ. J., Nov. 6, 2015, ECF No. 89-22 ("Pl.'s Mem."), at 4, n.2.

On May 31, 2012, defendants' relationship with Allstate ended when Yannis sold the economic interest in his Allstate insurance agency to Silletti for $1.9 million with the consent and approval of Allstate. Mintz Decl. at Ex. E (Asset Purchase Agreement), at § 4(a). Yannis did not sell Silletti the Northeast book of business. *See* Decl. of Yannis Sidakis, Dec. 23, 2015,

ECF No. 93 ("Dec. 23, 2015 Yannis Decl. No. 2"), at ¶ 29. Two weeks later, via email, Allstate requested Yannis' consent to transfer the Northeast book of business to Silletti. *Id.* at ¶ 41. Yannis declined. *Id.* His intention was to sell the Northeast book to another approved broker. *Id.* at ¶¶ 28-30. He claimed he was permitted to under the Allstate agreements. *Id.* at ¶¶ 32-39. Ignoring Yannis, Allstate instructed Northeast to transfer the book of business to Silletti. *Id.* at ¶ 42. According to Yannis' testimony, Northeast obliged, depriving Yannis of the opportunity to transfer his economic interest in this book to an approved broker for a valuable consideration. *See* Hr'g Tr., Feb. 4, 2016.

After Yannis' agency was sold, Andrew Sidakis opened the Sidakis Insurance Agency at a nearby location, 3275 Steinway Street, Suite 201C, Astoria, New York. *See* Compl. at ¶ 7.

## IV. Claims

### A. Allstate's Breach of Contract Claim

#### 1. Misuse of Confidential Information

Allstate alleges that Yannis and Andrew Sidakis discussed taking Allstate's confidential information with them after the sale of the book of business to Silletti. *See* Pl.'s Mem. at 4. According to Allstate, after learning his Allstate agency would be terminated, Yannis became "really upset and angry," and stated to Andrew that he would "[i]deally . . . move 50% of [his agency's] existing clients in the next two years into [Andrew's] new agency," and later, that he would "like to move 100% within six months." Mintz Decl. at Ex. F; Yannis Tr. at 96:7-18; 105:8-106:12. Andrew also expressed anger at Allstate to Yannis and stated that "I am fed up with Allstate and want to take as much business away from them as I can." Mintz Decl. at Ex. G.

Allstate points to a June 9, 2012 email in which Yannis wrote Andrew that "even though it violates the 'non-compete' I feel that we can have all their numbers and email addresses."

8

Mintz Decl. at Ex. I. Defendants agree that this email was sent, but argue that the intentions expressed were not acted upon. L.R. 56.1(a) Response, ECF No. 96 ("56.1(a) Resp."), at ¶ 20. Allstate also relies upon a response to the above email in which Andrew responded to Yannis that he "cannot scramble all the numbers, because as you noted correctly the number in ALSTAR stays in the permanent record. I will not change the ALSTAR number. All the other numbers I will change." Mintz Decl. at Ex. J. ALSTAR is an online portal where Allstate customer information, some of which is confidential, may be accessed by Allstate exclusive agents and other authorized persons. *See* Pl.'s Mem. at 5. Defendants admit the email was sent, but again deny that the action discussed actually occurred. 56.1(a) Resp. at ¶ 21.

Defendants do not deny being frustrated with Allstate, and making some of the incriminating statements relied upon by Allstate. *See* Hr'g Tr., Feb. 4, 2016, *passim*. Defendants, however, urge that, contrary to Allstate's interpretation, the conversation was to not take Allstate's confidential information – *i.e.*, Yannis expressing his strong disapproval of Andrew's intentions to do so. This factual dispute is immaterial. At issue is not whether Yannis and Andrew discussed taking confidential information, but whether they actually did so.

Andrew admittedly deleted and changed Allstate customer email addresses, but denies ever changing any phone numbers. Mintz Decl. at Ex. C (Feb. 18, 2015 Dep. Tr. of Andrew Sidakis) ("Andrew Tr."), at 154:7-156:9. According to Allstate, this was done with Yannis' knowledge. Defendants urge that an accurate factual description would be that Yannis learned of these changes after the fact and promptly informed Dan Sullivan, an Allstate Manager. According to Yannis, Dan Sullivan assured him (Yannis) that the issue would be promptly dealt with in a manner agreeable to all parties. 56.1(a) Resp. at ¶ 17; Hr'g Tr., Feb. 4, 2016. This dispute of fact is relevant in assessing Yannis' liability for breach. It is analyzed in detail below.

Allstate contends that as a result of Andrew's actions, neither Allstate nor Silletti was able to contact their customers. *See* Pl.'s Mem. at 9. Defendants take issue with this statement; the relevant testimony suggests Allstate could contact its customers. 56.1(a) Resp. at ¶ 18; Hr'g Tr., Feb. 4, 2016.

### 2. Altered Electronic Payment Options

According to Allstate, Andrew changed electronic payment options on Allstate customer accounts so that customers' accounts were not automatically renewed and service problems were created. Mintz Decl. at Ex. H (Dep. Tr. of Kathleen Angerman) ("Angerman Tr."), at 106:17-25; 109:3-24, 154:2-11. Defendants take issue with this statement, relying on Andrew Sidakis' Affidavit. 56.1(a) Resp. at ¶ 19. Defendants claim that even if changes were made, customers would have received their paper bills, and that changes in e-billing would at most "possibly create a small amount of inconvenience." *Id.*; Andrew Tr. at 194:4-195:6. This factual dispute is important for assessing Andrew's liability for breach and damages.

### 3. Failure to Return Allstate Property

Allstate alleges that Yannis' Allstate agency recorded customer information on manila folders in which policy information was inserted. Mintz Decl. at Ex. L (Feb. 20, 2015 Dep. Tr. of Rosie Monogioudis) ("Monogioudis Tr."), at 18:6-19:7. Allstate claims that the manila folders contained customer information that was not inserted into Allstate's electronic database. *See* Pl.'s Mem. at 4.

On June 18, 2012, Yannis emailed Anna Anastaspoulos, his employee at the time and formerly a co-defendant in this action. Mintz Decl. at Exhibit K. Yannis stated to Ms. Anastaspoulos that he wanted to make "the new agency [Andrew's agency] take off and be successful" without Allstate "getting to know anything about it." *Id.* Yannis "admitted' to Anna that:

10

- "It was a mistake to change the emails and the cell numbers on the first week that we closed the office;"

- "It was a mistake to process so many cancellations on June 14th – Andrew had stock piled them;"

- "It was a mistake not to give more docs in the files we delivered."

*Id.*

Defendants assert there is an issue of material fact with respect to the credibility of Ms. Monogioudis, a former Yannis employee who had not worked on Allstate files for more than two years before her employment with the agency was terminated. 56.1(a) Resp. at ¶ 24. Her testimony is the basis for much of Allstate's contentions. The reliability and sequence of the email is also in dispute; defendants argue that it is "necessary to understand the context in which Yannis spoke (as can be fully explained at trial)." *Id.* at ¶ 23. According to defendant, Yannis was trying to win the confidence of Andrew and his staff to follow his advice not to act inappropriately, and that he was mistaken in his admissions to Ms. Anastaspoulos; he thought that events that did not occur had occurred at the time he sent the email. *Id.* Yannis credibly testified at oral argument that his belief was mistaken. Hr'g Tr., Feb. 4, 2016.

Defendants maintain that by the time of closing there were limited documents in these folders because Allstate had adopted an electronic filing system and "instructed its agents not to maintain client information in paper file format, especially if they were not under lock and key." 56.1(a) Resp. at ¶ 24.

### 4. Misuse of Confidential Information to Illegally Compete

Allstate contends that Andrew and Yannis each solicited Allstate customers that they knew as a result of their Allstate relationship on behalf of the Sidakis Insurance Agency. *See* Pl.'s L. R. 56.1(a) Statement of Material Facts on Mot. for Summ. J., ECF No. 89-23 ("56.1(a) Statement"), at ¶¶ 28-30. Mr. Stefano C. Mattelini averred under oath that shortly after his

policies were serviced by Silletti, he received two separate letters from Yannis' "new insurance agency." Mintz Decl. at Ex. M (Jul. 10, 2015 Decl. of Stefano C. Mattelini) ("Mattellini Decl."), at ¶ 6. The second letter, according to Mr. Mattelini, "urged [him] to purchase insurance products from [Yannis] and not Allstate" and contained a side by side comparison of Mattelini's current Allstate insurance rate and the rate he would have if he switched to a non-Allstate insurance company. *Id.* at ¶¶ 7-8. According to Mr. Mattelini, these letters were unsolicited. *Id.* at ¶ 11. Yannis' declaration contradicts Mr. Mattelini's affidavit; he claims to have been retired, "not sending any letters." *See* Decl. of Yannis Sidakis, Dec. 23, 2015, ECF No. 91 ("Dec. 23, 2015 Yannis Decl. No. 1"), at ¶ 25. Neither of the letters have been produced.

Mr. David Kimmel also averred under oath that he received a call from someone on behalf of Andrew Sidakis asking him to purchase insurance products from Andrew and not Allstate. Mintz Decl. at Ex. N (Jul. 21, 2015 Decl. of David E. Kimmel, Jr.), at ¶ 5. According to his affidavit, Mr. Kimmel did not ask to be contacted; the call from Andrew's agency was within the first twelve months after Yannis sold his agency to Silletti. *Id.* at ¶¶ 6-7. Defendants contest Mr. Kimmel's affidavit. *See* Dec. 23, 2015 Yannis Decl. No.1 at ¶¶ 11-23. On November 6, 2012, Andrew emailed Ms. Anastaspoulos and told her that Yannis suggested that Andrew and she call Tower (another insurance company) clients to inquire whether they had any questions about their insurance. Mintz Decl. at Ex. O. Allstate claims Yannis understood that these were not Andrew's customers and that solicitation of these customers would be a violation of Andrews' Confidentiality Agreement with Allstate; that contention is in dispute. *See* Pl.'s Mem. at 6.

### B.     Yannis Sidakis' Breach of Contract Counterclaim

Yannis alleges that his various Allstate agreements permitted him to sell each economic non-Allstate derived interest separately.  Dec. 23, 2015 Yannis Decl. No. 2 at ¶¶ 34-39. Allstate's position is that the agent has no ownership interest in the Ivantage Business, and, thus, it is not the agent's to sell.  Allstate maintains that use of this book of business was merely an accommodation to the agent while he was an Allstate agent.  *See* Pl.'s Mem. at 11; Mintz Decl. at Ex. T.

Allstate contends that the Ivantage business was not Yannis' to sell, relying on provisions in the Allstate agreements and Brokerage Agreement.  Those agreements provide that:

- Northeast Agencies retains all ownership rights to business written by Agent;

- The expanded market book of business [Ivantage] will automatically transfer to the purchasing agent on the effective date of the Allstate book of business transfer; and

- "Upon termination, the Broker shall be entitled to commissions that are paid or payable as of the date of termination, but in no event shall the broker be entitled to commissions on insurance in force, or any renewal thereof, after the date of termination."

*See* Mintz Decl. at Ex. P (Supplement for the R3001 Agreement), Q (EA Independent Contractor Reference Guide), and R (Brokering Agreement) at § 16.

On June 27, 2012, Yannis asked Dan Sullivan of Allstate whether the Ivantage policies he serviced had been transferred to Peter Silletti.  Sullivan wrote Yannis that "[brokered business is not the agents to sell.  It is [an] accommodation while you are an agent and it belongs to the company which then assigns it."  Mintz Decl. at Exhibit T.

Yannis claims that ownership as defined by Allstate "means nothing;" he relies on the sworn testimony from two former Exclusive Allstate agents, Haile Mogos and Joseph DiBlasi, who claim to have obtained consideration for their Ivantage book of business separate and apart

from the Allstate book. Decl. of Joseph DiBlasi, Dec. 17, 2015, ECF No. 93-3; Decl. of Haile

Mogos, Dec. 16, 2015, ECF No. 93-4.

### C. Yannis Sidakis' Tortious Interference Counterclaim

Defendant Yannis Sidakis counterclaims that Allstate tortiously interfered with his

contractual relationship with Northeast, a third party, when it instructed Northeast to sell the

Ivantage Business to Silletti with no consideration for Yannis. *See* Defs.' Mem. in Opp. to Pl.'s

Mot. for Summ. J ("Def.'s Mem."), Dec. 24, 2015, ECF No. 99, at 1. This counterclaim turns

on the extent of Yannis' contractual rights. If the Ivantage Business was in fact Yannis' to sell,

there is a strong claim that Allstate tortiously interfered with that right. If the trier of fact finds

that the Ivantage Business was not Yannis' to sell, then his claim for tortious interference would

lack support.

### V. Summary Judgment Standard

Summary judgment is appropriate where admissible evidence in the form of affidavits,

deposition transcripts, or other documentation demonstrates the absence of a genuine issue of

material fact and one party's entitlement to judgment as a matter of law. *Bank of Am., N.A. v.*

*Fischer*, 927 F. Supp. 2d 15, 25 (E.D.N.Y. 2013) (citing *Viola v. Phillips Med. Sys. of N. Am.*, 42

F.3d 712, 716 (2d Cir. 1994)). "The relevant governing law in each case determines which facts

are material; '[o]nly disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment.'" *Id.* (citing *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "No genuinely triable factual issue exists when

the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after

drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational

jury could find in the non-movant's favor." *Id.* (citing *Chertkova v. Conn. Gen. Life Ins. Co.*, 92

F.3d 81, 86 (2d Cir. 1996)).

## VI.   Law

### A.   Breach of Contract

To plead a viable breach of contract claim under New York law, a "complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks omitted). The trial court's role at this stage in the litigation is to determine whether there exists any genuine dispute of material fact to be tried with respect to the elements of the claim, not resolve any factual disputes. *Anderson*, 477 U.S. at 248-49.

### B.   Tortious Interference with Prospective Economic Advantage

To state a tortious interference with prospective economic advantage claim, the claimant must allege that

> (1) [he] had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.

*Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006) (internal quotation marks and citation omitted).

The inquiry at this motion stage is to decide whether there is any genuine dispute of material fact with respect to the elements of defendant Yannis' counterclaim.

## VII.   Application of Law to Facts

### A.   Allstate's Breach of Contract Claim

The first issue presented by Allstate's motion for partial summary judgment is whether there is a genuine issue of material fact with respect to Allstate's claim for breach of contract against defendants Yannis and Andrew Sidakis.

15

When assessing the respective defendants' potential liability on summary judgment for this particular claim, Yannis and Andrew Sidakis must be considered separately. There may be triable issues of fact for one defendant, but not the other. Many of Andrew's actions appear to have been expressly disapproved by his father, Yannis, and carried out without his knowledge. The two defendants were not necessarily acting in concert and should not necessarily be held liable for each other's actions.

It is not disputed that agreements existed between Yannis, Andrew, and Allstate. Yannis admittedly entered into the EA Agreement (allowing him to become an exclusive Allstate agent), and Yannis and Andrew admittedly entered into the Confidentiality Agreement (allowing Andrew to be employed as a service provider at Yannis' Allstate agency). *See* Yannis Tr. at 15:9-16; Andrew Tr. at 21:5-22:11.

There are no allegations of inadequate performance by either party. Any genuine dispute on Allstate's breach of contract claim arises in connection with the "breach" element. Defendants Yannis and Andrew Sidakis' potential breaches are addressed in turn below.

### 1.     Yannis' Liability for Breach of Contract

As noted above, Yannis and Andrew agreed:

- That they will not at any time or in any manner, directly or indirectly, use any Allstate confidential information for their own benefit. *See* EA Agreement at § IV; Confidentiality Agreement at ¶ 4; and

- That all confidential information they were provided and had access to would at all times remain Allstate property and was to be returned upon termination of their respective relationships with Allstate. *See* EA Agreement at §§ IV.D, XVIII.B; Confidentiality Agreement at ¶ 5.

Allstate claims that Yannis and Andrew willfully and knowingly breached these obligations. In support of its claim, Allstate first points to an email exchange between Yannis and his son, Andrew. *See* Mintz Decl. at Ex. J. Allstate uses this email to point out that Yannis

wrote to Andrew that "even though it violates the 'non-compete' I feel that we can have all their numbers and email addresses." *Id.* This statement, however, was taken out of context. Yannis also says, and Allstate neglects to highlight, "[I] do not think that we should scramble all the phone #s of the clients' record. No, I feel a bit stronger than that: we cannot scramble all the numbers." *Id.* It appears Yannis was explaining to his son his disapproval of what Andrew planned to do by scrambling phone numbers, but also explaining that Peter Silletti only purchased one phone number per client and that Andrew did not need to give him all the phone numbers they had.

Andrew admittedly altered some customer email addresses, but Yannis offers what appears to be credible testimony that he was embarrassed when he learned about this after the fact, and immediately moved to remedy the situation by promptly contacting Allstate Manager Dan Sullivan. Yannis Tr. at 223:6-22; Hr'g Tr., Feb. 4, 2016. According to Yannis Sidakis, Dan Sullivan assured him the issue would be promptly corrected – impliedly without damage to Allstate. Yannis Tr. at 223:6-22. According to defendants, nothing was destroyed, and anything changed could be changed back with no adverse consequences. *See* 56.1(a) Resp. at ¶ 17.

The documentary evidence only shows that Yannis was considering improper actions, not that he actually took those actions. Yannis' testimony expressing his embarrassment because of Andrew's actions, and the email alluded to demonstrating his disapproval of Andrew's intentions to scramble and delete customer phone numbers and email addresses, suggest a finding in the father's favor. The evidence supports an inference that Yannis was not knowledgeable about Andrew's actions until after they occurred, and that he was not acting in concert with Andrew in carrying out these actions in violation of the Agreements.

Allstate relies on an email between Yannis and Anna Anastapoulos, the former Yannis employee. *See* Mintz. Decl. at Ex. K. In that email, Yannis admits that it was a mistake to change customer information, and destroy documents. *Id.* According to defendants, Yannis was trying to win the confidence of Andrew and his staff so they would follow his advice not to act inappropriately, and was mistaken in his admissions of guilt. *See* 56.1(a) Resp. at ¶ 23. Yannis argues that, viewing the matter in context, his actions were justifiable. *Id.* Yannis reaffirmed at the evidentiary hearing that he was mistaken in his admissions of guilt. Hr'g Tr., Feb. 4, 2016. It was not until days later after the event that Yannis learned Andrew had not done the damage Yannis thought he had. Still, embarrassed about the emails, Yannis contacted Allstate manager Dan Sullivan. The question is whether, in viewing the email between Yannis and Anna, a rational jury could reasonably find in Yannis' favor on Allstate's breach of contract claim against him. The answer is yes. Since the case will need to be tried, this issue should be left to the jury.

Allstate claims that defendants failed to return and wrongfully withheld Allstate property when they were expressly required to do so upon termination of the agency relationship. Specifically, it alleges that Yannis' agency recorded customer information on manila folders in which policy information was inserted, but Yannis never turned these folders over to Allstate. Instead, Allstate suggests that Yannis delivered brand new manila folders.

Virtually all of these material facts appear to be in dispute. Defendants take issue with the testimony of Ms. Monogioudis, who had not worked on Allstate files for more than two years before her employment with the agency was terminated. 56.1(a) Resp. at ¶ 24. Ms. Monogioudis' testimony is the basis for this portion of Allstate's argument. Yannis' contradictory testimony on this point appears credible.

On the current record there appear to be triable issues of fact about whether defendants withheld or destroyed information that constitutes Allstate's "confidential information" or "property."

Allstate relies upon sworn statements by two Allstate customers, Stefano Mattelini and David E. Kimmel, Jr., suggesting that Yannis took part in solicitation of new customers for Andrew's new agency, the Sidakis Insurance Agency. Specifically, Mr. Mattelini's testimony suggests that he received two separate letters from Yannis from "his new insurance agency." Matellini Decl. at ¶ 7. The second letter, according to Mr. Mattelini, "urged [him] to purchase insurance products from Yannis and not Allstate" and contained a side by side comparison of Mr. Mattelini's current Allstate insurance rate and the rate he would have if he switched to a non-Allstate insurance company. *Id.* The actual letters are not in the record, and Yannis denies ever writing such a letter. *See* Dec. 23, 2015 Yannis Decl. No. 1 at ¶ 25. This dispute should go to trial. It is worth noting that Allstate is only moving on breach of contract, and not on solicitation. If there will be testimony at trial pertaining to solicitation, it would not be unduly burdensome on the parties to hold this issue over for trial. A jury could find that Yannis' conduct was not egregious and did not occur as alleged.

Viewing the facts most favorably to the non-moving party, defendant Yannis has met his burden of demonstrating that genuine disputes of material fact exist with respect to Allstate's claim for breach of contract against him.

### 2. Andrew's Liability for Breach of Contract

Andrew's potential liability on summary judgment for breach of contract is clearer. Because Andrew admittedly altered *some* Allstate customer information, the question becomes, was the alteration serious and for his own benefit? If so, he is in violation of the Confidentiality Agreement. Andrew indisputably corresponded with Yannis expressing his anger at Allstate and

19

his intentions to carry out acts that he knew to be in violation of his Confidentiality Agreement. *See, e.g.*, Mintz Decl. at Ex. G. The issue is not whether Andrew discussed his frustrations with his father, but whether he actually acted on these frustrations – *i.e.*, breached his contract with Allstate.

By changing customer information, which was "confidential" and property of Allstate pursuant to contract, Andrew breached his contract. Any "use" in contravention of Allstate's best interests can be found to be in Andrew's interest. Relevant is Andrew's anger at Allstate's treatment of his father, and his desire to get even.

According to Allstate, Andrew also changed electronic payment options on Allstate customer accounts so that customer service problems ensued. *See* 56.1(a) Statement at ¶ 19. Andrew's testimony is to the contrary. *See* 56.1(a) Resp. at ¶ 19. This dispute should be resolved by a jury.

Andrew claims that even if he did change billing information, customers still would have received their paper bills, and that changes in e-billing would at most create a small amount of inconvenience. Andrew Tr. at 193:2-195:6.

There are jury issues as to Andrew's alleged breach and damages.

## B.    Yannis Sidakis' Breach of Contract Counterclaim

The second issue presented by Allstate's motion is whether there is a genuine dispute of material of fact with respect to defendant Yannis' breach of contract counterclaim. Summary judgment is denied on defendant's counterclaims. Viewing the evidence in the light most favorable to Yannis, the parties and their evidence are genuinely at odds over the right to sell the Ivantage book of business.

The existence of an agreement and adequate performance by the counterclaim plaintiff is not at issue. Yannis sufficiently alleged at the pleading stage that he suffered damages when he

was deprived of the opportunity to transfer his economic interest in the Northeast book of business. Any genuine disputes of material fact arise from the "breach" element. The question is whether Allstate breached the contract with Yannis when it acquired the Northeast business free of charge and without his consent.

Allstate references three contractual provisions, selected from both the Allstate agreements and Yannis' brokerage agreement with Northeast that it argues "expressly state": (1) Yannis did not hold any ownership rights in the Ivantage Business; (2) the Ivantage Business would automatically transfer with the sale of the Allstate book of business; and (3) any rights that Yannis had to the Ivantage Business terminated after his relationship with Allstate was terminated. *See* Pl.'s Mem. at 11. These clauses alone do not warrant granting Allstate's motion for summary judgment – other clauses in the Allstate agreements appear to be at odds with the three particular provisions selected by Allstate. For example, one provision states that Yannis "can sell [his] economic interest in [his] book of business to a single purchaser or multiple purchasers." *See* EA Independent Contractor Reference Guide, ECF No. 93-7, at p. 28.

Defendant Yannis provides what appears to be reliable evidence of other brokers who claimed to have sold this sort of book. Decl. of Joseph DiBlasi, Dec. 17, 2015, ECF No. 93-3; Decl. of Haile Mogos, Dec. 16, 2015, ECF No. 93-4.

A jury will need to weigh the evidence to arrive at a conclusion on whether the Ivantage book of business was in fact Yannis Sidakis' to sell, and whether he was wronged when it was transferred by Northeast to Silletti with no consideration to him.

## C.  Yannis Sidakis' Tortious Interference Counterclaim

The final issue presented by Allstate's motion is whether there is a genuine dispute of material fact with respect to defendant Yannis' tortious interference counterclaim.

The counterclaimant had a business relationship with a third party, Northeast.  It is not in dispute that the defendant knew of that relationship.  The genuine disputes of material fact on this claim arise with the second part of the second element (the defendant intentionally interfered with the business relationship), and third element (the defendant acted solely out of malice, or used dishonest, unfair, or improper means).  These inquiries can be resolved by determining who owned the Ivantage Business, who had the right to sell it, and who had the right to profit from it.  Since the record presents triable issues of fact on these questions, summary judgment is denied.

## VIII.  Conclusion

Allstate has failed to meet its burden of showing the absence of triable issues of material fact.  Its motion is denied.

A jury trial will commence on March 7, 2016 in Courtroom 10 B South.  By consent, a jury will be selected before the magistrate judge that morning, at a time set by the magistrate judge.  *In limine* motions and supporting briefs shall be filed by February 26, 2016.  *In limine* motions will be heard on March 2, 2016 at 10 a.m. in Courtroom 10 B South.  The individual defendants are not required to appear at this hearing, but may do so if they wish to.

By March 2, 2016 the parties shall file and docket: (1) complete lists of pre-marked exhibits proposed for use at trial and stipulations regarding admissibility; (2) lists of potential witnesses together with brief summaries of proposed testimony; (3) briefs on any evidentiary matters in dispute; and (4) and proposed jury instructions.  Courtesy copies shall be provided to the court.

The parties are referred to the magistrate judge for settlement discussions.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date:   February 10, 2016
        Brooklyn, New York